**In re BAILEY; Bailey, Appellant.**

[Cite as *In re Bailey* (1989), 64 Ohio App.3d 291.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–241.

Decided Sept. 14, 1989.

*Ward, Marein & Gillette, James M. Gillette* and *David F. Parchem,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Dennis Nealon,* for appellee Ohio Department of Human Services.

McCORMAC, Presiding Judge.

Appellant, William B. Bailey, appeals the judgment of the Franklin County Court of Common Pleas affirming an order of appellee, Ohio Department of Human Services, requiring appellant to repay $100,717.97 in Medicaid overpayments.

Appellant raises the following assignments of error:

"I. The use of statistical sampling procedure to determine alleged overpayments to a medicaid provider that is based on less than one percent of the total number of the provider's claims constitutes a denial of due process.

"II. The court of common pleas erred to the prejudice of the appellant by misinterpreting the standard of review for an Ohio Revised Code Section 119.12 appeal and thus refused to consider the appellant's constitutional argument."

Appellant is a licensed optometrist who has been a provider of optometric services to those eligible for Medicaid pursuant to a provider contract with appellee. The provider agreement requires that each provider maintain such

records as are necessary to document the services rendered. The agreement also incorporates by reference the Medicaid handbook issued by appellee. In part, section 106.3 of the handbook states:

"Review of Provider Records—Public Law 90–248, Social Security Amendment, 1967, Sec. 234(27), requires that the Ohio Department of Public Welfare 'provide for agreements with every person or institution providing services under the State Plan under which such person or institution agrees (A) to keep such records as are fully necessary to disclose the extent of the services provided to individuals receiving assistance under the State Plan, and (B) to furnish the State agency with such information regarding any payments claimed by such person or institution for providing services under the State Plan, as the State agency may from time to time request.'

"The review of a provider's records will be made in accordance with generally accepted auditing standards necessary to fulfill the scope of the audit. To facilitate this, the review shall be of only those records necessary to fully disclose the extent of the services provided to individuals receiving assistance under the Medicaid or General Relief–Medical programs. * * * "

In late 1985, appellee, through its Bureau of Surveillance and Utilization Review, obtained a summary profile report of appellant's examinations. This report is a determination of the provider's utilization of the Medicaid program as compared to his peers. An initial determination indicated that appellant had received payments in excess of those received by his peers. A review of appellant's claims history over a three-month period substantiated this conclusion and appellant was notified by mail, on November 20, 1985, that a full medical audit would be performed for the period January 1, 1983 through November 30, 1985.

Appellee performed the audit by using statistical sampling techniques. An initial sample of forty-eight claims, out of a total of 13,880 submitted by appellant for the time period in question, was selected and reviewed for billing errors. The variability in the amount of billing error per sample determined the sample size necessary to complete the audit. Based upon this initial review, a total sample size of seventy-one cases was determined necessary. These seventy-one files were randomly selected from a computer printout of all the pertinent claims. Appellee then obtained copies of the complete file, including the Medicaid billing form and patient records, for each of the seventy-one cases selected. These files were then examined by Dr. Clayton Hicks, a medical technical advisor to appellee, for discrepancies. Hicks determined that sixty-five of the seventy-one claims should be disallowed. The reason given for each disallowance was that appellant had failed to adequately document sufficient services to support the billing submitted.

Appellant billed each claim under a 92004 current procedural terminology code which, according to Section 602 of the handbook, is a general vision examination. Hicks concluded that, because many of the tests mandated by 92004 were not documented, the claims should be disallowed. Martha Lang, a supervisor of the ancillary unit of the Bureau of Surveillance and Utilization Review, modified Hicks' determination and allowed the claims under a 92002 initial intermediate code billing thereby partially allowing, as opposed to totally disallowing, the claims in question.

Upon completion of this review, the Bureau of Surveillance and Utilization Review calculated a monetary value for the disallowance. This result was then applied to all the pertinent claims through the use of a statistical formula resulting in a total disallowance of $100,717.97. Prior to issuing a final report, appellant was given the opportunity to rebut the findings of appellee. A conference was held on October 1, 1986, at which time appellant offered no additional information to contradict appellee's findings. Thereafter, appellee entered a final adjudication order finalizing the above disallowance.

■ By his first assignment of error, appellant argues that, while statistical sampling is not *per se* unconstitutional, appellee's determination was based upon such a small sample size that it was tantamount to a denial of due process. On the strength of *Daytona Beach General Hosp., Inc. v. Weinberger* (M.D.Fla.1977), 435 F.Supp. 891, appellant argues that due process requires a sample size of at least ten percent of the pertinent claims. The Florida District Court decision is not binding on this court and to the extent that that decision mandates a threshold sample level, we do not embrace its logic.

Statistical sampling methods used to extrapolate a total disallowance figure have been consistently upheld provided there exists an opportunity to rebut the initial determination of overpayment. *Georgia v. Califano* (N.D.Ga.1977), 446 F.Supp. 404; *Illinois Physicians Union v. Miller* (C.A.7, 1982), 675 F.2d 151; and *Quality Clinical Laboratories v. Dept. of Social Serv.* (1985), 141 Mich.App. 597, 367 N.W.2d 390. The rationale underlying this result comes from an application of the factors which must be considered when evaluating administrative procedures. Namely, (1) the private interest affected by the official action, (2) the risk of erroneous deprivation, and (3) the governmental interest, including the function involved in the financial and administrative burdens that additional procedures would entail. *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33.

■ Appellant does stand to lose a significant private interest, $100,717.97, but the burden on the state of a case-by-case audit of each claim made by every provider far outweighs appellant's private interests. Furthermore,

there has been no showing made that there is a significant risk of erroneous deprivation. Appellee's expert witness, Dr. Melvin Moeschberger, testified that the statistical methodology used was reliable and that an additional sample size would not necessarily increase reliability. Moeschberger stated that the seven percent precision level exhibited by appellee's audit was acceptable. He further testified that there was a ninety-five percent level of confidence that the actual figure would fall within the ranges generated by appellee's calculations. Appellant's expert validated the method used and found a flaw only in the lack of checks on the medical technical advisor's original decision to disallow appellant's claim as billed. The procedures used by appellee in conducting the audit of appellant's medicaid claims adequately satisfied due process requirements.

 In order for the sampling method to be conclusive, appellant must be provided an opportunity to rebut those findings. *Miller, supra.* Appellant was given this opportunity. Appellee, by letter, adequately informed appellant of his right to dispute appellee's findings prior to the issuance of a final adjudication order. A conference was held at which time appellant had the opportunity to challenge appellee's findings, but chose not to. As such, the constitutional requirements of due process were satisfied and the issue then becomes one of fact.

Both the hearing officer and the common pleas court concluded that, as a matter of fact, the statistical sampling method used was valid. Our review of that decision is limited to whether the common pleas court abused its discretion. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. Upon review of the record, we conclude that there was substantial, reliable, and probative evidence to support the common pleas decision and, therefore, there was no abuse of discretion.

Appellant's first assignment of error is overruled.

 Appellant's second assignment of error contends that the common pleas court erred in concluding that it was without authority to rule on the constitutionality of the procedures at issue. R.C. 119.12 expressly authorizes the common pleas court to rule on constitutional questions and the trial court did err to hold otherwise. However, for an error to mandate reversal it must be deemed prejudicial. Given our holding that the procedures involved were constitutional, no prejudice flows from the trial court's decision not to address the issue.

Appellant's second assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and MARTIN, JJ., concur.

JOHN D. MARTIN, J., of the Fairfield County Common Pleas Court, sitting by designation.