The State of Ohio, Appellee, *v.* Chaffin, Appellant.

[Cite as State v. Chaffin (1972), 30 Ohio St. 2d 13.]

(No. 71-471—Decided April 26, 1972.)

*Mr. Lowell S. Petersen,* prosecuting attorney, for appellee.

*Murray & Murray Co.,* L. P. A., and *Mr. Patrick Murray,* for appellant.

STERN, J. We affirm the judgment of the Court of Appeals.

Defendant raises several propositions of law, the first of which pertains to the bill of particulars filed by the state. In his request for a bill of particulars, defense counsel asked: "What, if any, scientific experiment was conducted to determine the nature of the alleged narcotic which the defendant allegedly had in his possession on January 23, 1970?" In response, the state answered, "Duquenois test was run." In response to defendant's further inquiry pertaining to the result of that test, the state answered that "the vegetation was identified as Cannabis Sativa."

At trial, the state's expert witness, on direct examination, testified that he had run the modified Duquenois test on the confiscated vegetation, and that he had received positive results therefrom. In addition, he testified that prior to running the modified Duquenois test he had examined the material under a microscope to determine if it had the microscopic characteristics of Cannabis Sativa. He testified that this was a normal procedure, and that the result of this test was also positive. No objection was made at that time, and, upon cross-examination, defense counsel made inquiries concerning both the Duquenois test and the microscopic examination.

Defendant's expert witness testified that the Duquenois test, even in its modified version, is not a scientifically conclusive test for Cannabis; that there are other commonly found vegetations which will produce the same chemical result. Having shown by evidence that the results of the Duquenois test were not conclusive proof that the substance was Cannabis, the defendant then moved to have the testimony concerning the microscopic examination stricken from the record on the ground that the state's answer in the bill of particulars, that the test used to determine the nature of the alleged narcotic was the Duquenois test, barred the state from introducing evidence concerning results of any test run on the confiscated vegeta-

tion, other than the Duquenois test. This motion was properly denied.

Section 10, Article I of the Ohio Constitution, provides, in part:

"* * * In any trial, in any court, the party accused shall be allowed * * * to demand the nature and cause of the accusation against him, and to have a copy thereof * * *."

As stated in *State* v. *Lewis* (1970), 21 Ohio St. 2d 203, 208:

"Those constitutional provisions may be satisfied by an indictment. However, where they are not, the prosecuting attorney is required on request to 'furnish a bill of particulars setting up specifically the nature of the offense charged.' See Section 2941.07, Revised Code."

This does not, however, require the state to disclose its evidence. *State* v. *DeRighter* (1945), 145 Ohio St. 552, 556; paragraph four of syllabus in *State* v. *Petro* (1947), 148 Ohio St. 473; *Foutty* v. *Maxwell* (1962), 174 Ohio St. 35, 38; *State* v. *Wilkinson* (1969), 17 Ohio St. 2d 9, 11.

In this case, the defendant was indicted for selling a narcotic drug, which was further specified to be Cannabis. This in itself specified the nature of the offense charged, and the state's answer in the bill of particulars merely substantiated that the charge was directed solely to the sale of Cannabis, and no other drug.

The instant case is readily distinguishable from *State* v. *Fowler* (1963), 174 Ohio St. 362, wherein the defendant was charged in the alternative with driving under the influence of liquor, narcotic drugs or opiates. In that case, the defendant was unable to ascertain from the indictment what, specifically, he was charged with.

In this case, the defendant was not deprived of notice as to any element of the crime with which he was charged, and no new element was introduced by the state at trial. Neither the state, nor the defendant, was limited by the bill of particulars to the sole running of the Duquenois test. Both parties could have run any test which could have conclusively proved the nature of the confiscated vegetation,

and it is a matter of record that the state did furnish defendant's counsel with a sample of the confiscated vegetation.

Accordingly, the testimony regarding the positive identification by microscopic examination was properly admitted.

Defendant's second proposition of law is that the 20-to-40-year penalty prescribed by R. C. 3719.99(F) constitutes cruel and unusual punishment, in violation of Section 9, Article I of the Ohio Constitution, and the Eighth Amendment to the United States Constitution.

The defendant was found guilty of selling Cannabis Sativa on January 23, 1970. At that time, under R. C. 3719.01(L), Cannabis was included in the definition of "narcotic drugs," and under R. C. 3719.99(F), the penalty for sale of a narcotic drug was 20 to 40 years. Mere possession of Cannabis, at that time, bore the penalty of a fine of not more than $10,000 and imprisonment for not less than two nor more than 15 years for a first offense. R. C. 3719.99(C).

Since that time, the General Assembly has thoroughly examined the nature and extent of the drug problem throughout this state. As a result of the General Assembly's investigations and hearings, by the amendment of narcotics statutes, effective September 16, 1970, Cannabis was removed from the definition of narcotic drugs, and was included within the definition of hallucinogens. R. C. 3719.40. In addition, the penalty for mere possession was reduced to a fine of not more than $1,000 or imprisonment for not more than one year, or both, for a first offense. R. C. 3719.99(N). However, the General Assembly did not reduce the penalty for the *sale* of Cannabis.

In *McDougle* v. *Maxwell* (1964), 1 Ohio St. 2d 68, this court held that the amendment of a criminal statute, reducing the punishment for operating a motor vehicle without the owner's consent—from not less than one nor more than twenty years to a maximum of six months imprisonment and a $500 fine—did not render a more severe sen-

tence, imposed under the former statute, cruel and unusual punishment. *A fortiori*, where an amendment pertains only to the classification of an offense, and in no way changes the penalty for the identical offense, the amendment in no way makes a sentence under the former statute cruel and unusual punishment. This amendment merely emphasizes the General Assembly's awareness of the recent documentary information available concerning the use of Cannabis.

It being our duty to examine this 20-to-40-year sentence to determine whether it violates the "cruel and unusual punishments" sections of the Ohio and United States Constitutions, we note the language used by this court in *McDougle, supra*, at pages 69 and 70:

"It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." Further, this court said: "Where the offense is slight, more may be prohibited than savage atrocities. However, the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." See *Kasper* v. *Brittain* (1957), 245 F. 2d 92, and *State* v. *Juliano* (1970), 24 Ohio St. 2d 117.

Our review of the constitutionality of the sentence imposed in this case does not support the claim that the sense of justice of the community has been shocked. We hold that the 20-to-40-year sentence imposed does not constitute cruel or unusual punishment.

Defendant's third proposition of law is that the trial court erred in overruling his motion for a change of venue. Defendant's motion was predicated on the fact that newspapers and radios in the Ottawa County area had disclosed that the defendant was previously indicted on 18 counts of narcotic violations in or about April 1969. In addition, the newspapers had made reference to the fact

that the defendant's father-in-law was the previous sheriff of Ottawa County. (It had been well-publicized in the Ottawa County area that the father-in-law had previously pleaded guilty to certain criminal charges filed against him in federal court.)

This court stated the law in this matter in *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 164, as follows:

"'* * * Section 2931.29, Revised Code, provides, in part: 'If it appears to the Court of Common Pleas, by affidavit or evidence in open court, that a fair and impartial trial cannot be had in the county where a cause is pending, such court shall order the accused tried in another county.' This statute has been uniformly interpreted to invest the trial court with discretion as to whether a change of venue is necessary to insure a fair and impartial trial. Further, it has long been the rule in Ohio that 'the examination of jurors on their *voir dire* affords the best test as to whether or not prejudice exists in the community against the defendant; and where it appears that the opinions as to the guilt of the defendant of those called for examination for jurors are * * * not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue.' *Townsend* v. *State* (1912), 17 C. C. (N. S.), 380, 25 C. D. 408, affirmed without written opinion, 88 Ohio St. 584 (1913).''

In our review of the record, we note that the defendant voluntarily stated at trial that he had previously been in jail. Further, no copy of the *voir dire* examination has been provided, thus depriving us of evidence as to a need for a change of venue. There is no claim that the trial was not conducted with decorum and impartiality, and the defendant points to no specific instance where a juror was subjected to the publicity complained of. There being no showing of any abuse of discretion by the trial judge in the conduct of the trial, we conclude that defendant's motion was properly denied.

Defendant's fourth and fifth propositions of law relate to the trial court's refusal to allow the defendant to cross-

examine his own witness, Joseph Schrader. Defendant contends that Schrader should have been declared a hostile witness because he had acted as an agent for the state and he testified on direct examination that he had lied during a portion of his testimony because he had been threatened by a probation officer and narcotics agents. Although we agree that such a situation, under some circumstances, could require the trial court to allow cross-examination by the party who called the witness, we do not agree that it must follow in every instance.

An examination of the record shows that defense counsel requested the court to declare witness Schrader hostile shortly after his questioning had begun. At that time, no evidence of hostility had been demonstrated and the request was denied. Shortly thereafter, the witness, on his own, testified that he had been lying, but that he was now ready to tell the truth. The defense counsel did not then renew his request to have the witness declared hostile, but did continue to question the witness. Again the witness evidenced no hostility, but proceeded to give timely answers, the bulk of which was intended to support the defendant's claim of entrapment. The record, however, does not reveal that the witness induced the defendant to commit the crime and no entrapment was shown.

Upon cross-examination by the state, the witness' credibility was further lessened, and no redirect questions were asked. At the close of the trial, defense counsel asked to recall the witness, and to be permitted to examine him as upon cross-examination. The witness was recalled, but cross-examination was properly not permitted by the trial judge. Again the witness evidenced no hostility toward the defendant or defense counsel; there was no indication that additional information was being withheld by the witness. At the hearing on the motion for a new trial the witness elaborated on the testimony he had given at trial, but again there was no indication that additional information was available.

The record in this case does not justify that cross-

examination should have been allowed, or that the defendant was prejudiced by the trial court's ruling.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, LEACH and BROWN, JJ., concur.