### In re COMPLAINT OF SARVER.

[Cite as *In re Complaint of Sarver* (1990), 70 Ohio App.3d 471.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–513.

Decided Nov. 29, 1990.

472

*William B. Nye,* for appellant Larry Sarver.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Angela G. Phelps–White,* for appellee Ohio Board of Building Standards.

---

McCORMAC, Judge.

Appellant, Larry Sarver, appeals from the judgment of the Franklin County Court of Common Pleas, affirming the order of appellee, Ohio Board of Building Standards ("board"), suspending appellant's electrical safety inspector certificate of competency for a period of one year, and raises the following assignments of error:

"First Error

"The court, and appellee, erred in finding that appellant was on or about September 25, 1987, a permanent 'back-up' electrical safety inspector for Stow, Ohio.

"Second Error

"The court, and appellee, erred in interpreting OAC 4101:2–93–09(B) to have application to appellant, regardless of whether appellant was an employee of Stow or a person who contracted for services with (for) Stow, Ohio.

"Third Error

"The court, and appellee, erred in finding that appellant was on or about September 25, 1987, employed, as an electrical safety inspector or otherwise, by Stow, Ohio.

"Fourth Error

"The court, and appellee, erred in finding that appellant, in Stow, on or about September 25, 1987, or anytime thereafter until the filing of the complaint with appellee by letter dated September 9, 1988, was there employed as an electrical inspector and did engage there in electrical installation or construction work as a contractor; and in finding appellant performed inspections 'for compensation.'

"Fifth Error

"The court, and appellee, under the circumstances of the case, erred in suspending appellant for 1 year as the same is cruel and unusual punishment, done for the purpose of communicating appellee's rule to others rather than as an appropriate sanction of appellant."

Appellant is an electrical contractor whose business is conducted in and around the area of Stow, Ohio. In 1985, appellant became certified by the board as an electrical safety inspector. His certification permitted him to conduct inspections for compliance with Ohio's Building Code. It was appellant's desire to eventually give up his contracting business if he could obtain a permanent position as a municipal electrical inspector.

The city of Stow employed Jack Murphy as its full-time electrical inspector. It had always been Murphy's practice to enter into a written contract with a certified inspector to fill in when Murphy took vacation. In July 1987, Murphy contacted appellant and requested that appellant fill in for him while he was on vacation. Appellant accepted and entered into a written contract with the city of Stow. Appellant contends that he understood the independent contractor's agreement to include only the nine days of Murphy's vacation. However, the contract is not so restricted by its terms but, rather, provides that appellant is to perform " * * * periodic duties for an indeterminate period." After the contract was signed, Stow listed appellant as a back-up electrical safety inspector on its yearly operational report submitted to the board for renewal of the city's certification as an authorized building department.

Appellant fulfilled his obligation to perform inspections while Murphy was on vacation in July 1987 and, thereafter, went back to his work as an electrical contractor. In September 1987, appellant applied for and received two permits to perform private electrical work from the Stow Building Department. Murphy took ill in May 1988 and appellant again substituted for him. Appellant did not apply for or obtain electrical permits during any of the periods he was actually performing electrical inspections. In October 1987, appellant accepted a position with the city of Kent as its full-time electrical safety inspector.

A formal complaint was filed with the board by Thomas Fuhrman, manager of the North Central Ohio Chapter of the National Electrical Contractor's Association, alleging that appellant was guilty of a conflict of interest by inspecting and installing within the same jurisdiction. An evidentiary hearing was conducted by the board resulting in an order suspending appellant's certification for a period of one year. As a result of the investigation, appellant also lost his inspector's position with the city of Kent. The board's order was affirmed by the Franklin County Court of Common Pleas.

■ In reviewing an order of an administrative agency, a trial court must examine all of the evidence to determine whether the agency's order is supported by reliable, probative, and substantial evidence. R.C. 119.12; *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. This court, when reviewing an appeal pursuant to R.C. 119.12, may reverse only upon a showing that the trial court abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. An abuse of discretion implies more than an error of law or judgment, but a decision which is unreasonable, arbitrary, unconscionable, or clearly wrong. *Beacon Journal Pub. Co. v. Stow* (1986), 25 Ohio St.3d 347, 25 OBR 399, 496 N.E.2d 908. With this standard in mind, we turn to appellant's assignments of error.

Appellant's first three assignments of error are interrelated and will be discussed together. By these assignments of error, appellant contends that, as a matter of law, he does not fall within the ambit of Ohio Adm.Code 4101:2–93–09 and, hence, cannot be punished for its violation.

Ohio Adm.Code 4101:2–93–09 provides, in pertinent part:

"(B) No person employed as a certified electrical safety inspector by the state or political subdivision thereof, who for compensation inspects the construction and electrical installation of light, heat, or power services equipment, or the installation, alteration, replacement, maintenance, or repair of any electrical wiring and equipment subject to the 'Ohio Basic Building Code' or the electrical code of a political subdivision, shall engage in electrical installation within the jurisdiction by which he is employed."

■ Appellant first argues that it was error for the board to find that he was employed as an electrical safety inspector on September 25, 1987, when he was issued permits by the city of Stow. It is appellant's contention that, since he was only under contract to fill in for Stow's full-time inspector while he was on vacation, any employment agreement would have terminated prior to the September permit issuances. However, based upon the following evidence, the trier of fact could properly find to the contrary. The independent contractor's agreement, which appellant signed, did not limit its duration to the period of Murphy's vacation, but actually provided that the contract was for " * * * an indeterminate period." Secondly, appellant did fill in at a later date when Murphy became ill, thereby evidencing an ongoing relationship with the city of Stow.

■ We note that the independent contractor agreement between appellant and Stow was not introduced at the administrative level. However, appellant did offer this exhibit at the common pleas level. While the contract was not

submitted to the trial court in literal compliance with R.C. 119.12, it is contained in the record on appeal to this court. Since there is no objection to its inclusion, we will consider it as in the record.

■ Appellant next contends that Ohio Adm.Code 4101:2–93–09 conflicts with Ohio Adm.Code 4101:2–1–45 and that appellant is subject to the provisions of the latter section. Ohio Adm.Code 4101:2–1–45(H) and (I) provide:

"(H) No employee of the department or person who contracts for services with the department shall perform services for the department when the same would require him to pass upon, inspect, or otherwise exercise any authority given by the OBBC over any labor, material, or equipment furnished by him for the construction, alteration, or maintenance of a building or the preparation of working drawings or specifications for work within the jurisdictional area of the department;

"(I) The department shall have in its employ or under contract, alternate personnel meeting the requirements of this rule, to serve in the event of a conflict of interest or the unavailability of the building official, plans examiner or inspectors. * * * "

Appellant maintains that Ohio Adm.Code 4101:2–1–45(H) establishes two types of inspectors: employees of the department and those under contract to the department. Continuing, appellant argues that Ohio Adm.Code 4101:2–1–93 only applies to employees of the department and, since he was not an employee, the less stringent standard of Ohio Adm.Code 4101:2–1–45, *i.e.*, one cannot inspect what he installs, applies to him. Therefore, since he did not inspect work that he performed, he was not in violation of the board's rules. We are unpersuaded by appellant's argument.

■ A review of Ohio Adm.Code 4101:2–1–93 establishes that two classifications were either not intended, or, if they were, the full prohibitions applied equally to both. Ohio Adm.Code 4101:2–1–93 uses the term "employed" not "employee." Webster's Third New International Dictionary (1966) 743, defines "employ" as " * * * something on which one is employed or with which he is occupied * * *," whereas "employee" is defined as " * * * one employed by another [usually] in a position below the executive level and [usually] for wages * * *." The plain meaning of employ encompasses a much broader spectrum of persons and activities than does the meaning of employee. Case law is replete with examples where a person "employs" an independent contractor. See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; *Lancaster Colony Corp. v. Limbach* (1988), 37 Ohio St.3d 198, 524 N.E.2d 1389; *Stratso v. Song* (1984), 17 Ohio App.3d 39, 17 OBR 93, 477 N.E.2d 1176. An independent contractor is not an employee, but he may be in the employ of

another. By using the word "employed," the board has included independent contractors who perform occasional services to local building departments within the provisions of Ohio Adm.Code 4101:2–93–09. Therefore, the more stringent conflict of interest provision does apply since it is the more specific of the administrative provisions.

■ Finally, appellant argues that the board, by its administrative rules, has placed the burden upon local building departments to instruct their personnel as to what conflicts are prohibited. They argue that, since appellant was not instructed properly as to his prohibited activity, it is the city of Stow and not appellant that was in violation. Appellant has ignored the express mandate of Ohio Adm.Code 4101:2–93–09(A), wherein it is stated that all certified inspectors:

" * * * [S]hall be knowledgeable of the requirements of the Ohio Revised Code and the rules of the board of building standards relative to certification and to the practice of electrical inspection and shall adhere to such requirements."

We conclude that Ohio Adm.Code 4101:2–93–09 and 4101:2–1–45 address two distinct subjects and are not in conflict. Ohio Adm.Code 4101:2–93–09 deals exclusively with the certification of individual inspectors and 4101:2–1–45 deals with the certification of entire building departments. Therefore, the two provisions are not in conflict because they were drafted to regulate two distinct entities.

Appellant's first, second, and third assignments of error are overruled.

In his fourth assignment of error, appellant contends that the order of the board was not supported by reliable, probative, and substantial evidence and it was error for the common pleas court to so hold. Appellant argues that there was no evidence before the administrative body that he actually performed any electrical installation or construction, nor was there any evidence that he received compensation for or was in the employ of the city of Stow.

The evidence before the administrative body consisted of the statement of Fuhrman, a union official testifying about a non-union contractor, a photo copy of a computer listing of electrical permits issued by the Stow Building Department, and a copy of the Stow yearly operational report listing appellant as a back-up safety inspector. To prove a violation of Ohio Adm.Code 4101:2–93–09, it must be shown that the alleged violator was under the employ of a local building department, that he conducted inspections of electrical installations or repairs, that he received compensation for conducting the inspections, and that he performed contracting services during the same period he was employed to inspect electrical work.

■ Appellant denied that he intended to be, or was aware that, he would be listed as a back-up inspector. However, he did fill in for Murphy after his initial nine-day substitution period. Even though the contract between Stow and appellant was not before the board, there was sufficient evidence to support a continuing employment relationship. No evidence was introduced to show that appellant ever received compensation from Stow, yet there is a permissible inference of compensation that may be drawn given the proof of employment.

■ There was likewise no evidence that appellant actually performed any inspections. If an inspection was made, appellant would have had to sign off on a final report which presumably would have been retained by either Stow's building department or the board at its central office. Furthermore, even if these records were not available and we were to indulge an inference that inspections were made, there was no evidence establishing that appellant actually did any electrical construction or repair. Merely showing that appellant was issued permits is insufficient to establish that work was performed. If appellant actually did do the work covered by a permit, an inspection form would have been completed by the acting inspector. This information should have been easily obtainable by the board prior to the hearing since it is the body responsible for overseeing the inspection. In sum, the evidence presented to the board was inadequate to establish the elements of appellant's alleged violation, particularly that he performed contracting services in relation to the permits that he obtained.

■ We recognize that an administrative hearing is intended to be informal in nature and that the rules of evidence and procedure do not apply. However, if an agency is going to hand down penalties as harsh as the one issued to appellant, fundamental notions of fairness dictate that the proof offered must be able to withstand at least a minimum of judicial scrutiny. The evidence presented against appellant was lacking as to a required element of the charged violation; thus, the board's decision was not supported by reliable, probative, and substantial evidence and the common pleas court abused its discretion in so concluding.

Appellant's fourth assignment of error is sustained.

Appellant's final assignment of error contends that the one-year suspension was unduly harsh and amounted to cruel and unusual punishment.

[10, 11] Generally, the protections afforded by the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution do not apply to civil actions. See *Ingraham v. Wright* (1977), 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711; *In re Burton* (1984), 11 Ohio St.3d 147, 11 OBR

465, 464 N.E.2d 530. Therefore, appellant's cruel and unusual punishment argument does not apply to the present action.

[12] Even if constitutional protections did apply, we cannot conclude that the punishment handed out was cruel and unusual in that it does not shock the sense of justice of the community. See *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus. The board's revocation does not deny appellant his liberty but merely revokes a privilege granted by the state. The punishment was well within the statutory authority granted the board and could have been much more severe. See R.C. 3783.07.

Appellant's fifth assignment of error is overruled.

Appellant's first, second, third, and fifth assignments of error are overruled. Appellant's fourth assignment of error is sustained. The judgment of the trial court is reversed and the case is remanded for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and JOHN C. YOUNG, JJ., concur.