Cupp, J.,
dissenting.
{¶ 119} For a violation of the Eighth Amendment’s prohibition against cruel and unusual punishment, as a general matter, the punishment in question must be “grossly disproportionate” to the crime’s severity. See Graham v. Florida, — U.S. —, 130 S.Ct. 2011, 2037, 176 L.Ed.2d 825 (2010) (Roberts, C.J., concurring in judgment) (the Eighth Amendment does not require strict proportionality between the crime and the sentence, but forbids only extreme sentences that are grossly disproportionate to the crime). This “narrow proportionality” standard is highly deferential and strongly favors upholding a punishment that has been imposed as authorized by a particular statute. It sets a very high bar for a challenger claiming a violation of the Eighth Amendment’s ban to overcome. Judges do not possess blanket authority to second guess decisions of legislatures or sentencing courts. Id. Successful Eighth Amendment challenges to noncapital sentences are “ ‘exceedingly rare.’ ” Id., quoting Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
{¶ 120} This court has similarly recognized the high bar a challenger asserting cruel and unusual punishment must overcome. In State v. Chaffin, 30 Ohio St.2d 13, 17-18, 282 N.E.2d 46 (1972), this court upheld the imposition of a 20- to 40-year prison sentence for a defendant convicted of selling cannabis, rejecting the defendant’s contention that his punishment was cruel and unusual. Paragraph three of the Chaffin syllabus held that a punishment is not cruel and unusual *545 unless the punishment is “so greatly disproportionate to the offense as to shock the sense of justice of the community.” See also State v. Hairston, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 13-14 (reiterating the validity of the “gross disproportionality” standard and acknowledging that it can be met only in a very limited number of cases).
{¶ 121} When reviewing a particular juvenile punishment for an Eighth Amendment violation, an offender’s status as a juvenile must be taken into account because juveniles are typically less culpable than adults due to their youth and immaturity. Graham, — U.S. at —, 130 S.Ct. at 2039-2040, 176 L.Ed.2d 825 (Roberts, C.J., concurring in judgment). However, the general standards of gross disproportionality and substantial deference to the legislative judgment expressed within the relevant statute are not to be abandoned merely because the offender is a juvenile.
{¶ 122} I dissented in State v. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, because I could not find, as the majority did, that certain portions of 2007 Am.Sub.S.B. No. 10 (“S.B. 10”) are punitive in nature for purposes of a retroactivity analysis pursuant to the Ohio Constitution, Article II, Section 28. I acknowledge, however, that Williams must be regarded as established precedent on the issues it resolved. Further, as the majority opinion in this case recognizes, the United States Supreme Court in Graham recently held that the Eighth Amendment’s prohibition of the infliction of cruel and unusual punishment is violated when a juvenile offender who did not commit homicide receives a sentence of life imprisonment without possibility of parole.
{¶ 123} But the sex-offender registration and notification provisions at issue in this case are so significantly different from the punishment at issue in Graham— lifetime imprisonment with no chance of parole, with its fundamental loss of liberty — that I am left wondering how the two can possibly be considered comparable for constitutional purposes.
{¶ 124} Although the provisions of R.C. 2152.86 subjecting certain juveniles to automatic lifetime registration and notification requirements, with a potential for reclassification after 25 years, may be viewed as highly burdensome or even onerous, they do not reach that high level of punishment that the United States Supreme Court has held categorically unconstitutional. The punishments held by the United States Supreme Court to violate the Eighth Amendment ban when applied to juveniles are the death penalty, Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and lifetime imprisonment without the possibility of parole for serious, but non-homicide, crimes. Graham, — U.S. —, 130 S.Ct. 2011, 176 L.Ed.2d 825. I do not find the requirements at issue here pertaining to registration and notification to rise to such a level as to be even remotely comparable.
*546 {¶ 125} The statutory requirements at issue apply only to a small and select category of juvenile offenders — those who have committed the most serious sex offenses after reaching the age of 14 and who have ultimately received a disposition as a serious youthful offender (“SYO”) after all the procedural steps of the SYO process have been fulfilled. The General Assembly has determined that these offenders pose a special danger to public safety that separates them from all other juvenile offenders. R.C. 2152.86 assigns only offenders of this type to the special category of public-registry-qualified juvenile-offender registrants, or PRQJORs.
{¶ 126} Under R.C. 2152.86, all juveniles who commit sex offenses before their 14th birthday, those juvenile sex offenders over the age of 14 who commit less serious offenses than C.P. committed, and those offenders who have not received a SYO disposition are not considered PRQJORs. R.C. 2152.86(A)(1). The General Assembly’s differentiations in this regard are not unreasonable in light of its objective of protecting the public, and the determinations are entitled to substantial deference.
{¶ 127} Justice O’Donnell’s dissenting opinion makes clear that C.P.’s offenses, if committed by an adult, would have potentially resulted in convictions for three first-degree felonies and a very long prison sentence, thus highlighting the seriousness of C.P.’s conduct that the majority opinion merely mentions in passing. C.P.’s status as a PRQJOR is a direct consequence of his own actions.
{¶ 128} The Graham court majority’s decision to adopt a categorical rule as to the particular issue raised in that case was driven by two critical considerations. First, juvenile offenders who did not kill or intend to kill have a “twice diminished moral culpability,” Graham, — U.S. at —, 130 S.Ct. at 2027, 176 L.Ed.2d 825, because (1) they are juveniles, who in general lack maturity, are vulnerable to negative influences, and are more capable of change than adults, id. at 2026, and (2) their offenses are not deserving of the most serious forms of punishment, which should be reserved for adults who commit murder. Id. at 2026-2027. Second, sentences of life in prison without parole “share some characteristics with death sentences that are shared by no other sentences,” including irrevocability, and therefore must be regarded as “especially harsh punishment for a juvenile.” Id. at 2027 and 2028. The court in Graham thus concluded that the high bar that must be overcome for a punishment to be deemed cruel and unusual was met largely because of the exceptionally harsh punishment a sentence of life imprisonment without parole entails.
{¶ 129} In the present case, however, the majority unjustifiably relies on the offender’s juvenile status to minimize the substantial bar the challenger must surmount to establish cruel and unusual punishment. In place of that substantial *547 bar, the majority substitutes a threshold that bears no resemblance to the threshold applied in the review of the death penalty in Roper or the review of the sentence of life imprisonment with no possibility of parole in Graham. The punishment under scrutiny in Graham deprived the juvenile offender in that case of “the most basic liberties without giving hope of restoration” because the offender was to be imprisoned for life with absolutely no prospect of parole. Id. at 2027. In contrast, most courts have held that sex-offender notification and registration requirements of the type at issue in this case are not even “punishment” for purposes of the Eighth Amendment, even if the requirements do place heavy burdens on an offender. See United States v. Juvenile Male, 670 F.3d 999, 1010-1011 (9th Cir.2012), and other cases cited and discussed in Justice O’Donnell’s dissent. The sex-offender notification and registration requirements at issue here, while burdensome, simply do not approach the severity of the punishments at issue in Graham or Roper.
{¶ 130} The majority opinion, unfortunately, fails to acknowledge this fundamental difference, even as it repeatedly compares the requirements in this case to the punishment of lifetime imprisonment in Graham. Instead, it appears to stage-manage the Graham factors in order to reach its own preferred policy result.
{¶ 131} In so doing, the majority opinion completely loses sight of the overriding meaning of the standards applicable in cases of this nature. Although the registration and public-disclosure provisions at issue in this case are criticized by some as imprudent and too harsh, a demonstration of simple disproportionality is not enough to support a finding of an Eighth Amendment violation — the disproportionality must be great. Taking into account the very serious offenses C.P. committed, as delineated in Justice O’Donnell’s dissent, the disproportionality here is not of such a magnitude that it contravenes the constitutional proscription against cruel and unusual punishment.
{¶ 132} Additionally, I am unable to agree with the majority’s determination that R.C. 2152.86 violates due process principles. The majority’s finding of fundamental unfairness fails to take into account that PRQJORs such as C.P. reach that status only by undergoing a rigorous narrowing process designed to exclude most juvenile sex offenders. R.C. 2152.13. The statute at issue provides adequate procedural safeguards for those offenders who are not excluded, and who are ultimately assigned PRQJOR status, to satisfy due process concerns.
{¶ 133} Finally, the majority’s analysis leaves unanswered a multitude of additional issues that its conclusions generate. As a result, the trial court will be forced to guess what is actually required in this case upon remand. I note just two of these unanswered questions.
*548 C. David Warren, Athens County Prosecuting Attorney, and George Reitmeier, Assistant Prosecuting Attorney, for appellee, state of Ohio.
Timothy Young, State Public Defender, and Brooke M. Burns, Assistant Public Defender, for appellant, C.P.
Nadia Seeratan, urging reversal for amici curiae National Juvenile Defender Center, Association for the Treatment of Sexual Abusers, Central Juvenile Defender Center, Juvenile Justice Coalition, Ohio Justice and Policy Center, Dr. Elizabeth J. Letourneau, and Dr. Morris Jenkins.
{¶ 134} First, the majority opinion concludes that the lack of discretion afforded to a juvenile judge by R.C. 2152.86 in assigning the PRQJOR designation is a significant infirmity in the statute bearing upon its constitutionality. The syllabus states that the statutory provisions are unenforceable only “[t ]o the extent that ” R.C. 2152.86 “imposes automatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system.” (Emphasis added.) Does this mean that a juvenile judge may now, notwithstanding the statute, exercise discretion as to whether to impose sex-offender notification and reporting requirements on PRQJOR-status offenders such as C.P.? If so, what are the boundaries of that discretion?
{¶ 135} Second, another constitutional infirmity of the statute, according to the majority opinion, is that the registration and notification requirements are lifelong (with a possibility for adjustment after 25 years). May a juvenile judge in the exercise of discretion now impose requirements of shorter duration on offenders such as C.P. and overcome the constitutional deficiencies? If so, what duration will satisfy the majority’s concerns?
{¶ 136} It is not just the juvenile judge in this particular case who must decipher the meaning of this court’s analysis. This decision will also affect other juvenile offenders and the juvenile judges who will preside over their cases. This court apparently leaves it to those judges to unravel the mysteries of this decision’s application. Moreover, should the General Assembly seek to revise the statute to conform with this court’s decision, it will have a difficult time discerning the new Eighth Amendment boundaries that the decision creates.
{¶ 137} I am unable to agree that the provisions of R.C. 2152.86 at issue violate either the United States or Ohio constitutional prohibitions against cruel and unusual punishment and the requirements of due process. I would hold that the provisions under consideration survive constitutional scrutiny and would affirm the judgment of the court of appeals. Therefore, I respectfully dissent.
*549 Kim Tandy, urging reversal for amicus curiae Children’s Law Center, Inc.
Gamso, Helmick & Hoolahan and Jeffrey M. Gamso; and James L. Hardiman and Carrie L. Davis, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.
Michael DeWine, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Laura Eddleman Heim, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.