[Cite as *State v. Pore*, 2014-Ohio-790.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| CHARLES R. PORE | : | Case No. 2013CA00119 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County
                             Common Pleas Court, Case No.
                             2011-CR-0354


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            March 3, 2014


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       EARLE E. WISE, JR.
Prosecuting Attorney                  122 Central Plaza, North
                                      Canton, OH 44702

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, OH 44702

*Baldwin, J.*

{¶1}    Appellant Charles R. Pore appeals a judgment of the Stark County Common Pleas Court sentencing him to an aggregate term of 47 years to life imprisonment for one count of rape with a sexually violent predator specification and a repeat violent offender specification, one count of aggravated burglary with a repeat violent offender specification, and one count of notice of change of address, registration of new address.   Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}    Appellant was released from prison on December 20, 2010, after serving a sentence for felonious assault and abduction.   Appellant had also been convicted of abduction and attempted rape in 1996.   Without being employed or having money, appellant approached E.T. at her residence, which was for sale. Pore had ascertained that E.T. lived there with a roommate, A.B.   Appellant inquired about the house, and E.T. told him to talk with A.B. since she was the owner of the house. When appellant called A.B., she told him to go through the realtor, who was Deb McCracken. Appellant called McCracken, told her his name was Mike Davis, and pretended to be interested in buying the house.

{¶3}    On February 27, 2011, appellant came to the house in mid-afternoon and found E.T. home alone.   Appellant told her that he wanted to leave some contact information, so she let him into the house and led him to the kitchen, where appellant could write on a table.   Appellant asked her for a tissue as he had a runny nose, so she turned to get a tissue.   Appellant pulled a steak knife, which he had taken from his

girlfriend's kitchen, and ordered E.T. to do what he told her to do and she would not get hurt.

{¶4}    Appellant next marched E.T. into a bedroom and ordered her to take off her clothes.  He used the knife to cut off her bra. After she had undressed, appellant marched her to the front door of the residence and had her lock the front door. Appellant led her back to the bedroom, still armed with his knife. Appellant had E.T. get on the bed doggie-style first, and then on her back, as he attempted to penetrate her vaginally with his penis. Before trying to enter her, appellant used his finger to stimulate E.T.'s vagina in order to make entry easier. According to appellant, he was still unable to enter her, in part because E.T. allegedly would not keep still. E.T. kept asking appellant why he was doing this, and asking him to leave.   Appellant claimed that he reassured the frightened woman by telling her that he was not going to hurt her. After some 30 minutes, appellant finished and left the home. He later threw away his clothing and the knife in a dumpster in the neighborhood.

{¶5}    According to the lab report prepared by a forensic scientist of the Canton–Stark County Crime Laboratory, a semen sample was obtained from the rape kit performed at Aultman Hospital. The results of a comparison analysis revealed that to a reasonable degree of certainty (excluding identical twins), Charles R. Pore is the source of the semen on the vaginal swabs.

{¶6}    Appellant was indicted on April 11, 2011. He was charged with one count of rape with a sexually violent predator specification and a repeat violent offender specification; one count of kidnapping with a sexual motivation specification, a sexually violent predator specification and a repeat violent offender specification; one count of

aggravated burglary with a repeat violent offender specification; and one count of notice of change of address; registration of new address. Pore pled guilty as charged on July 21, 2011 and was sentenced on August 3, 2011 as follows: rape 10 years, sexually violent predator specification 15 years to life consecutive to rape, repeat violent offender specification 8 years consecutive to rape; kidnapping 10 years, consecutive to rape, sexual motivation specification 15 years to life merged with the sexually violent predator specification for rape, repeat violent offender specification 8 years consecutive to the kidnapping and merged with the repeat violent offender specification for rape; aggravated burglary 10 years consecutive to rape and kidnapping, repeat violent offender specification 8 years consecutive to the aggravated burglary and merged with the repeat violent offender specification for rape; notice of change of address, 2 years consecutive to rape, kidnapping and aggravated burglary. The Court further imposed a sanction of 2 years for violation of post release control to be served consecutive to all other counts. Thus, the aggregate sentenced imposed was a total period of incarceration of fifty-seven (57) years to life imprisonment. Appellant was further designated as a Tier III offender pursuant to R.C. 2950.01(G). Finally, appellant was ordered to serve mandatory periods of post release control.

{¶7} On appeal to this Court, we found that the trial court committed plain error by failing to merge appellant's convictions and sentences for rape and kidnapping, and we remanded for resentencing. At the resentencing hearing, both the prosecution and the defense jointly recommended a prison term of 35 years. Appellant stipulated to the record established at the original sentencing hearing and the trial court incorporated the record of the original hearing, including the court's earlier findings, into the current

record. The court rejected the recommended sentence and instead sentenced appellant to an aggregate term of 47 years to life, as follows: rape 10 years, sexually violent predator specification 15 years to life consecutive to rape, repeat violent offender specification 8 years consecutive to rape; aggravated burglary 10 years consecutive to rape, repeat violent offender specification 8 years consecutive to the aggravated burglary and merged with the repeat violent offender specification for rape; notice of change of address, 2 years consecutive to rape and aggravated burglary. The Court further imposed a sanction of 2 years for the violation of post release control to be served consecutive to all other counts.

{¶8} Appellant assigns two errors on appeal:

{¶9} "I. THE TRIAL COURT ERRED IN SENTENCING MR. PORE TO A SENTENCE OF 47 YEARS TO LIFE IN VIOLATION OF THE EIGHTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION, WHICH PROHIBITS CRUEL AND UNUSUAL PUNISHMENT.

{¶10} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING MR. PORE TO 47 YEARS TO LIFE IMPRISONMENT IN VIOLATION OF MR. PORE'S RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I.

{¶11} In his first assignment of error, appellant argues that his sentence constitutes cruel and unusual punishment in violation of the United States and Ohio Constitutions. He specifically argues that his sentence is extreme and disproportionate.

He argues that he did not remove the victim from the home, did not physically injure her, expressed remorse, and cooperated fully with the police.

{¶12} The Eighth Amendment to the United States Constitution prohibits "[e]xcessive" sanctions. It provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

{¶13} The Eighth Amendment does not require strict proportionality between crime and sentence, but only forbids extreme sentences that are grossly disproportionate to the crime. *State v. Weitbrecht* , 86 Ohio St.3d 368, 373, 715 N.E.2d 167 (1999), quoting *Harmelin v. Michigan*,501 U.S. 957, 1001, 111 S.Ct. 2680 (1991),(Kennedy, J., concurring in part and in judgment). In *Solem v. Helm*, 463 U.S. 277, 290-292, 103 S.Ct 3001, 3010-3011, 77 L.Ed.2d 637, 649-50 (1983), the United States Supreme Court set forth a three-part test for determining whether a sentence is disproportionate to the crime: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. A sentence does not violate the constitutional prohibition against cruel and unusual punishment unless the sentence is so grossly disproportionate to the offense as to shock the sense of justice in the community. *State v. Chaffin,* 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46 (1972).

{¶14} Further, for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather

than on the cumulative impact of multiple sentences imposed consecutively. *State v. Hairston*, 118 Ohio St. 3d 289, 888 N.E.2d 1073, 2008-Ohio-2338, ¶20. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment. *Id.* As a general rule, a sentence that falls within the terms of a valid sentencing statute cannot constitute cruel and unusual punishment. *Id.* at ¶21.

{¶15} Appellant does not challenge the sentencing statutes pursuant to which he was sentenced, nor does he argue that he was not sentenced within a range permitted by statute. Further, we reject appellant's claim that the aggregate term of 47 years to life imprisonment constitutes cruel and unusual punishment pursuant to *Hairston*, *supra*.

{¶16} Appellant does appear to make an argument that the sentence for rape is disproportionate to the crime because he did not use the knife to harm the victim, he did not strike or beat her, he did not tie her up or hold her for a prolonged period of time, and the act of penetration was neither rough nor prolonged.

{¶17} However, the trial court outlined the heinous nature of appellant's crimes, and his criminal history. Appellant admitted at the sentencing hearing that he has a sexual addiction that he cannot control. Sent. Tr. August 3, 2011, p. 6. The instant crime was committed only 69 days after he was released from prison for a 2004 conviction of felonious assault and abduction, and he had been convicted in 1996 of abduction and attempted rape. By his own admission to police, he began stalking the victim shortly after his release from prison. He found E.T. living with a roommate in a house put up for sale by her roommate. He pretended to be a potential buyer for the

home, giving the realtor a false name. He gained entry to the home when E.T. was home alone by pretending he needed to leave contact information regarding the sale of the home. While he didn't physically harm E.T. with the knife he carried with him to the house, he used the knife to cut her bra off after ordering her to undress, and he held the knife to her neck while telling her not to scream. Under the facts and circumstances of the offense and considering appellant's past violent criminal history and his demonstrated recidivism rate, the sentence for rape is not grossly disproportionate to the crime.

{¶18}   The first assignment of error is overruled.

II.

{¶19}   In his second assignment of error, appellant argues that the court abused its discretion in sentencing him to a term of 47 years to life imprisonment, and that such abuse of discretion violates due process under the Fifth Amendment to the U.S. Constitution. Appellant argues that the facts of the case, his conduct, his cooperation with police and his demonstrated remorse mitigate against the lengthy sentence.

{¶20}   The Supreme Court of Ohio in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 set forth a two step process for examining felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse of discretion standard. *Id.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Kalish,* supra, at ¶ 19.

{¶21}  Appellant has not demonstrated that the court abused its discretion.  While appellant argues that the court placed too much emphasis on his prior record, appellant has demonstrated a tendency to reoffend, committing the instant crimes only 69 days after his release from prison after serving a sentence of six years for felonious assault and abduction.  Appellant was on post release control at the time of the crimes and stalked the victim prior to the crimes.  Further, appellant was convicted of attempted rape and abduction in 1996.   As noted by the court, there are no factors indicating that recidivism is unlikely.   Appellant used the subterfuge of being a potential buyer of the home where the victim lived to gain entry to the home.  While he didn't physically harm E.T. with the knife he carried with him to the house, he used the knife to cut her bra off after ordering her to undress, and he held the knife to her neck while telling her not to scream.  He used the knife to move her throughout the house, and the ordeal lasted between 30-40 minutes.  Based on the facts of the case and appellant's criminal history, the court did not abuse its discretion in sentencing him to a term of imprisonment of 47 years to life.

{¶22}  The second assignment of error is overruled.

{¶23}  The judgment of the Stark County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.