THE STATE OF OHIO, APPELLEE, *v.* O'SHANNON, APPELLANT.

(No. 86AP-1149 — Decided May 24, 1988.)

*Michael Miller,* prosecuting attorney, and *Alan C. Travis,* for appellee.

*Gottfried, Palmer & Linsker* and *Jeffrey A. Linsker,* for appellant.

WHITESIDE, P.J. Defendant, Michael Patrick O'Shannon, appeals from a judgment of the Franklin County Court of Common Pleas and raises the following assignment of error:

"The Court erred in sentencing Appellant to a term of incarceration in a state penal institution, because the sentence constituted cruel and unusual punishment and was thus violative of the Eighth Amendment to the United States Constitution, as applied to the State of Ohio by the Fourteenth Amendment to the United States Constitution."

Defendant, a fifty-six-year-old male who has suffered an amputation of the right leg above the knee and facial reconstruction and is confined to a wheelchair, was indicted by the Franklin County Grand Jury for violation of R.C. 2913.02 on two unrelated counts of theft. Count one of the indictment charged that defendant stole property valued at over $300 from Sears, Roebuck & Company and had two prior theft convictions. Count two alleged a theft from Gold Circle also with the two prior convictions.

On October 16, 1986, on the advice of counsel, defendant entered a guilty plea to count one, in exchange for which a *nolle prosequi* was entered as to count two. After a presentence investigation, which included review of the medical and psychological report furnished by defendant, defendant was sentenced to a definite term of eighteen months' imprisonment.

Defendant first contends that his sentence of penal incarceration is disproportionate to the crime committed. Defendant entered a plea of guilty to a felony of the third degree in violation of R.C. 2913.02(B), involving the theft of property valued at more than $300 and having previously been convicted of two or more theft offenses. Sentencing was under R.C. 2929.11(D), which provides that

anyone pleading guilty to a felony of the third degree who did not cause physical harm to any person or make an actual threat of physical harm during the commission of the crime shall be imprisoned for a definite term of one, one and one-half, or two years. The Supreme Court of Ohio in *McDougle* v. *Maxwell* (1964), 1 Ohio St. 2d 68, 30 O.O. 2d 38, 203 N.E. 2d 334, held that, as a general rule, a sentence that falls within the terms of a valid statute cannot constitute cruel and unusual punishment.

The eighteen-month sentence imposed was within the limits authorized by statute and there exists no evidence in the record that the sentence is disproportionate to sentences generally imposed for a third felony theft conviction even with respect to individuals having severe medical problems. Even assuming that other individuals with similarly extensive health problems have been given lighter sentences or probation, no abuse of discretion is demonstrated if the sentence imposed is within the authorized limits and the record contains no evidence indicating any reason for a lesser sentence. The legislature did not see fit to provide for lesser sentences for persons with extensive health problems or to "license" the medically handicapped to commit theft offenses without being subject to the same treatment as others committing such offenses.

Defendant also contends that the eighteen-month sentence imposed is cruel and unusual punishment based on his physical condition. The length of an otherwise valid sentence is not immune to judicial scrutiny in all circumstances. A trial court has the authority pursuant to R.C. 2929.51 to modify a sentence and place a felony offender on probation pursuant to R.C. 2951.02. In so doing, the trial court, pursuant to R.C. 2951.02, shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk, the nature and circumstances of the offense, and the history, character, and condition of the offender. No one factor is to control the court's determination. R.C 2951.02. The following factors, among others, shall be considered in favor of placing an offender on probation: the offense did not cause or threaten serious harm to persons or property or the defendant did not contemplate it would do so; the offense was the result of circumstances unlikely to recur; the character and attitude of the defendant indicates he is unlikely to commit another offense; and imprisonment of the defendant will cause him undue hardship. R.C. 2951.02 similarly provides that the following factors, among others, while not controlling, are to be considered against placing an offender on probation: the defendant has recently violated conditions of parole or probation; there is a substantial risk that the defendant will commit another offense; and the defendant needs correctional or rehabilitative treatment that can best be provided by commitment to a penal institution. However, R.C. 2951.02(F) provides that a defendant shall not be placed on probation or have his sentence suspended pursuant to R.C. 2929.51 if he is a repeat offender. A "repeat offender" is defined by R.C. 2929.01(A) as:

"* * * a person who has a history of persistent criminal activity, and whose character and condition reveal a substantial risk that he will commit another offense. It is prima-facie evidence that a person is a repeat offender if any of the following apply:

"* * *

"(3) Having been convicted of one or more theft offenses as defined in section 2913.01 of the Revised Code, and having been imprisoned pursuant to sentence for any such offense, he commits a subsequent theft offense * * *."

In other words, a determination of

whether to suspend a sentence of imprisonment and to place an offender on probation requires the trial court to start with what would otherwise be a mandatory sentence for commission of a third-degree felony pursuant to R.C. 2929.02(B) and then to consider the particular facts of the case and the nature of the individual before the court in an attempt more precisely to tailor the punishment for the crime to the individual involved following the guidelines of R.C. 2951.02. By the adoption of both R.C. 2951.02 and 2929.11, Ohio law has anticipated and provided for variations in sentencing depending upon the circumstances involved, but health is not one of those expressly stated factors.

In the case before us, there is evidence that the trial court was fully advised as to the facts and delayed sentencing, ordering a presentence investigation. The record indicates that the court was aware that defendant had been placed on probation with respect to the two prior convictions in three other instances, two of which involved petty thefts, and that defendant committed this crime while on probation from a previous sentence. Additionally, reports from the Cleveland Medical Center regarding defendant's extensive medical problems and from the Child and Adult Guidance Center detailing the results of psychological tests administered to the defendant were given to the trial court. Although the actual reports themselves are not contained in the record on appeal, copies are attached to defendant's brief. Even though not a part of the record, the two reports do not substantiate the constitutional claim. The latter report does contain a psychologist's recommendation that incarceration would only "reinforce defendant's bitterness and mistrust" and extinguish the "substantial and positive" adjustments defendant had made within the past few years. The report states that defendant continued to involve himself in consistent, long-term therapy to resolve his "chronic characterological" difficulties. These pertain only to the exercise of trial court discretion not rising to the constitutional magnitude of cruel and unusual punishment.

Before sentencing, defendant informed the trial court that at the time of sentencing he was taking five medications daily; that he had had four hospitalizations within the last year, and anticipated three to four more within his lifetime; that he was at the time of sentencing unable to drive a motor vehicle and was in an electric wheelchair, rather than a manual wheelchair, and could not bend over to pick up things which dropped; that he had recently required a dog which was to be with him at all times; that he was economically supported solely by social security benefits, which would not be reinstated for two years until after release from any incarceration; that he had been the recipient of city-wide civic awards; and that he was physically incapable of committing again the crimes of which he was charged. However, other than the two medical reports which were attached to defendant's brief and apparently sent to the court but not included in the record on appeal, there is no additional evidence on record to support defendant's contentions. Again, these involve the exercise of discretion in light of all the circumstances and do not demonstrate the presence of a substantial constitutional issue.

The trial court, in its judgment entry filed November 26, 1986, stated unequivocally that it considered all factors required by R.C. 2951.02 before sentencing defendant. Based on the record before us, we cannot even find that the sentence imposed is disproportionate to the crime involved, considering the factors of R.C. 2951.02 in light of the fact that the defendant has

previously violated the conditions of probation and that the defendant has a history of prior criminal activity. Much less could we find a constitutional violation. Nor can we find that even defendant's assertions before the court and letters from medical authorities attached to defendant's brief constitute evidence requiring a finding that the present offense is a result of circumstances unlikely to recur and that the defendant is likely to respond to probationary treatment. Defendant has in no way demonstrated even that the punishment was disproportionate to the crime as applied to the facts and to the defendant before us, much less that a constitutional violation occurred.

Defendant contends that the sentence imposed was cruel and unusual punishment in violation of the United States Constitution. The Eighth Amendment to the United States Constitution requires that no cruel and unusual punishment shall be inflicted and is applicable to the states through the Fourteenth Amendment. Section 9, Article I of the Ohio Constitution prohibits the infliction of cruel and unusual punishment. Defendant's sentence is not cruel and unusual punishment. In *State* v. *Juliano* (1970), 24 Ohio St. 2d 117, 53 O.O. 2d 307, 265 N.E. 2d 290, the Supreme Court of Ohio held that a sentence which falls within a valid statute will not amount to cruel and unusual punishment. Two years later the Supreme Court of Ohio, in *State* v. *Chaffin* (1972), 30 Ohio St. 2d 13, 59 O.O. 2d 51, 282 N.E. 2d 46, held in paragraph three of the syllabus that punishment does not violate the constitutional prohibition against cruel and unusual punishment if it is not so greatly disproportionate to the offense as to shock the conscience of the community. The defendant does not contend that eighteen months' incarceration for theft with more than three

prior convictions is unconstitutional on its face. Instead, he contends that, as applied to a person with his particular infirmities, the punishment is cruel and unusual under the United States Constitution.

The United States Supreme Court in *Weems* v. *United States* (1910), 217 U.S. 378, held that receiving a sentence of fifteen years' imprisonment at hard labor for falsifying a public record was so disproportionate to the offense as to constitute cruel and unusual punishment. In *Solem* v. *Helm* (1983), 463 U.S. 277, the United States Supreme Court held that a sentence of life imprisonment without the possibility of parole following conviction of defendant for his seventh nonviolent felony (the writing of a bad check) constituted cruel and unusual punishment. The Eighth Amendment prohibition against cruel and unusual punishment has also been held to apply, under some circumstances, to the death penalty. See *Gregg* v. *Georgia* (1976), 428 U.S. 153, 187, and *Furman* v. *Georgia* (1976), 408 U.S. 238. In *Hutto* v. *Finney* (1978), 437 U.S. 678, the United States Supreme Court, having before it a case which involved punitive isolation of prisoners in a cell for an indeterminate time, stated at 685:

"The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, 'proscribe[s] more than physically barbarous punishments.' * * * It prohibits penalties that are grossly disproportionate to the offense * * * as well as those that transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.' * * *"

In all cases, the United States Supreme Court has applied the Eighth Amendment prohibition against cruel and unusual punishment to punishment which is grossly disproportionate

to the *offense* itself. While defendant, because of his handicaps, may suffer greater hardships in prison than one without such disabilities, these hardships are not a result of his conviction or imprisonment but are the result of his physical and mental conditions which are essentially the same whether defendant is incarcerated or not. As long as defendant's medical needs are met during incarceration (and there is no reason to believe that they will not be met), the imposition of an eighteen-month sentence cannot constitute cruel and unusual punishment.

In light of the foregoing, defendant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

YOUNG and BRYANT, JJ., concur.