The STATE of Ohio, Appellee,

v.

BARNES, Appellant.

[Cite as *State v. Barnes* (2000), 136 Ohio App.3d 430.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76686.

Decided Jan. 10, 2000.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Mary H. McGrath*, Assistant Prosecuting Attorney, for appellee.

*James A. Draper*, Cuyahoga County Public Defender, and *Darin Thompson*, Assistant Public Defender, for appellant.

JAMES D. SWEENEY, Judge.

■ An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc. App.R. 11.1. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision. *Crawford v. Eastland Shopping Mall Assn.* (1983), 11 Ohio App.3d 158, 11 OBR 240, 463 N.E.2d 655; App.R. 11.1(E).

In this appeal on the accelerated docket, defendant-appellant, William F. Barnes, appeals his conviction for one count of escape in violation of R.C. 2921.34(A)(1) following his plea of no contest.[1] For the reasons adduced below, we affirm.

---

1. The version of the offense which was effective in September of 1998 provides:

"2921.34 Escape

"(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."

A review of the record on appeal indicates that Barnes was a parolee in September 1998. A condition of his parole was that he report to his parole officer on a regular basis. Barnes did not report to his parole officer on September 9, 11, 14 and 15, 1998.

On March 31, 1999, Barnes was indicted on one count of Escape for having not reported to his parole officer during the two-week period in September 1998.

Thereafter, subsequent to an oral hearing, the trial court denied Barnes's motion to dismiss the indictment, which argues that the potential penalty for the offense of escape violated the constitutional prohibition against cruel and unusual punishment. Following this ruling, Barnes withdrew his previously entered plea of not guilty and entered a plea of no contest. Barnes was sentenced to the minimum term available of one year in prison on the offense of escape.[2]

This appeal provides one assignment of error:

"Appellant's conviction of escape pursuant to R.C. 2921.34(A) predicated upon failing to report to a parole officer violates the cruel and unusual punishment clauses of the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution."

As stated in *Solem v. Helm* (1983), 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637, 645:

"The Eighth Amendment declares: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."

The *Solem* court also defined a tripartite standard of review for alleged violations of the Eighth Amendment:

"When sentences are reviewed under the Eighth Amendment, courts should be guided by objective factors that our cases have recognized. (FN17) First, we look to the gravity of the offense and the harshness of the penalty. In *Enmund*, for example, the Court examined the circumstances of the defendant's crime in great detail. 458 U.S. [at 797–798], 102 S.Ct., at 3377 [73 L.Ed.2d at 1151–1152]. In *Coker* the Court considered the seriousness of the crime of rape, and compared it to other crimes, such as murder. 433 U.S., at 597–598, 97 S.Ct., at 2868–2869 [53 L.Ed.2d at 992–993] (plurality opinion); id., at 603, 97 S.Ct., at 2871 [53 L.Ed.2d

---

In addition, R.C. 2921.01(E) defines "detention" as "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution."

2. As a result of his prior felony conviction for grand theft, the potential term of imprisonment for Barnes in this case was one to five years. R.C. 2921.34(C)(2)(b), 2929.14(A)(3).

at 996] (POWELL, J., concurring in the judgment in part and dissenting in part). In Robinson the emphasis was placed on the nature of the 'crime.' 370 U.S., at 666–667, 82 S.Ct., at 1420–1421 [8 L.Ed.2d at 762–763]. And in *Weems,* the Court's opinion commented in two separate places on the pettiness of the offense. 217 U.S., at 363 and 365, 30 S.Ct., at 547 and 548 [54 L.Ed., at 797 and 797–798]. Of course, a court must consider the severity of the penalty in deciding whether it is disproportionate. See, e.g., *Coker,* 433 U.S., at 598, 97 S.Ct., at 2869 [53 L.Ed.2d, at 993] (plurality opinion); *Weems,* 217 U.S., at 366–367, 30 S.Ct., at 548–549 [54 L.Ed., at 798–799].

"Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. Thus in *Enmund* the Court noted that all of the other felony murderers on death row in Florida were more culpable than the petitioner there. 458 U.S., at [795–797], 102 S.Ct., at 3376 [73 L.Ed.2d at 1150–1152]. The Weems Court identified an impressive list of more serious crimes that were subject to less serious penalties. 217 U.S., at 380–381, 30 S.Ct., at 554–555 [54 L.Ed., at 803–804].

"Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions. In *Enmund* the Court conducted an extensive review of capital punishment statutes and determined that 'only about a third of American jurisdictions would ever permit a defendant [such as *Enmund* ] to be sentenced to die.' 458 U.S., at [792], 102 S.Ct., at 3374 [73 L.Ed.2d, at 1148]. Even in those jurisdictions, however, the death penalty was almost never imposed under similar circumstances. Id., at [794–795], 102 S.Ct., at 3375 [73 L.Ed.2d, at 1149–1150]. The Court's review of foreign law also supported its conclusion. Id., at [796], n. 22, 102 S.Ct., at 3376 [73 L.Ed.2d, at 1151], n. 22. The analysis in *Coker* was essentially the same. 433 U.S., at 593–597, 97 S.Ct., at 2866–2868 [53 L.Ed.2d, at 990–993]. And in *Weems* the Court relied on the fact that, under federal law, a similar crime was punishable by only two years' imprisonment and a fine. 217 U.S., at 380, 30 S.Ct., at 554 [54 L.Ed., at 803–804]. Cf. *Trop v. Dulles,* 356 U.S. 86, 102–103, 78 S.Ct. 590, 598–599, 2 L.Ed.2d 630 [643–644] (1958) (plurality opinion).

"In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. (Footnotes omitted.)" *Solem v. Helm* (1983), 463 U.S. 277, 290–292, 103 S.Ct. 3001, 3010–3011, 77 L.Ed.2d 637, 649–650.

■ This court, when reviewing another case that raised the constitutionality of a criminal sentence, stated that: "it is well established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community. *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46; *State v. Jarrells* (1991), 72 Ohio App.3d 730, 596 N.E.2d 477." *State v. Hamann* (1993), 90 Ohio App.3d 654, 672, 630 N.E.2d 384, 395.

This court took notice of *Solem* and *Chaffin* in *State v. Lazada* (1995), 107 Ohio App.3d 189, 191–192, 667 N.E.2d 1292, 1293–1294, when we stated the following in considering a constitutional review of a criminal sentence:

"The standard of review for determining the constitutionality of Lazada's sentence is plenary. Ohio courts have held a sentence does not violate the constitutional prohibition against cruel and unusual punishment if it is not so greatly disproportionate to the offense as to 'shock the sense of justice of the community.' See *State v. Chaffin* (1972), 30 Ohio St.2d 13 at 17 [59 O.O.2d 51 at 54], 282 N.E.2d 46 [at 47]. See, also, *State v. O'Shannon* (1988), 44 Ohio App.3d 197, 542 N.E.2d 693. Moreover, the Supreme Court of the United States has provided that '*Reviewing courts, of course, should grant substantial deference to broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess sentencing convicted criminals.*' *Solem v. Helm* (1983), 463 U.S. 277, 290, 103 S.Ct. 3001 [3009], 77 L.Ed.2d 637 [649]. In either case, the ultimate decision is whether the punishment, as a matter of law, violates the United States or the Ohio Constitution.

"The Supreme Court concluded proportionality analysis 'should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.' *Id.* at 292 [103 S.Ct. at 3011, 77 L.Ed.2d at 650]. *The court, however, noted that ' * * * no one factor will be dispositive in a given case.' Id.* at 290 [103 S.Ct. at 3010, 77 L.Ed.2d at 649] fn. 17.

"In *Harmelin v. Michigan* (1991), 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836, *a plurality of the Supreme Court focused the proportionality requirement set forth in Solem and eliminated the need for comparative proportionality analysis in every case. 'The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.'* [501 U.S. at 1005], 111 S.Ct. at 2707 [115 L.Ed.2d at 872]. Therefore, *where ' * * *a comparison of [a defendant's] crime with his sentence*

does not give rise to an inference of gross disproportionality,' a comparative analysis with other sentences need not be performed. See Id.

"In comparing the crimes and punishment imposed in the case sub judice, *this court gives substantial deference to the General Assembly's sentencing guidelines which demonstrate an intent to make punishment proportionate to the degree of crime.*" (Emphasis added.)

██ In light of *Harmelin*, the state of the law is that if a comparison of "the gravity of the offense and the harshness of the penalty" under the first element of *Solem* does not give rise to an inference of gross disproportionality, then the "comparative analysis with other sentences," pursuant to the second and third elements of the *Solem*, "need not be performed." [3]

██ Turning our attention to the first element of *Solem*, appellant argues that this element runs in favor of him because the "gravity of this offense is relatively small." Appellant cites to no authority for this proposition other than to state that: (1) he did not meet with his parole officer for a two-week period; and, (2) by "criminalizing this conduct, the Ohio Legislature has suddenly taken a matter, which was previously dealt with only in an administrative fashion, and has made it a criminal offense ..." Appellant's cavalier argument is not supported by the law. We note with great deference that Ohio's General Assembly has seen fit, through its passage of R.C. 2921.34, to stiffen the punishment available to detainees, which includes parolees, who choose to break their detention or fail to return to detention. We also recognize that there exists a strong presumption of constitutionality with regard to legislative determinations. This legislative action, on its own, clothes the offense with a presumption that the General Assembly considered the gravity of the offense to be of such seriousness to the state that heightened penalties were justified in order to provide a deterrent. The General Assembly clearly wished to deter those detainees from violating their detention status and running the risk of criminal recidivism or interrupting their orderly rehabilitation and return to the law-abiding population. In addition, this determination by the General Assembly to treat the crime of escape as a grave offense is corroborated by R.C. 2901.01(A)(9), which defines escape as an "offense of violence." Being an offense of violence, it does not shock the conscience of the community that, in appellant's case, the range of punishment for a conviction of escape is one to five years imprisonment.

---

3. Although *Harmelin* is a plurality opinion, the opinion of Justice Kennedy, joined by Justices O'Connor and Souter, concurring therein to which we cite, constitutes the holding of the Supreme Court. See *United States v. Kaluna* (C.A.9, 1999), 192 F.3d 1188, 1999 U.S.App. LEXIS 23729, at 28.

**436**

As to the harshness of the penalty incurred by appellant for having failed to report to his parole officer on four occasions over a two-week period, we note that the trial court imposed the minimum sentence available. Obviously, the trial court took into consideration the facts of the offense and proportionately tailored the penalty to the degree of the crime.

Having not found an inference of gross disproportionality in comparing the appellant's crime with his sentence, the second and third comparative analysis elements of *Solem,* which compare other sentences, need not be performed.

Assignment overruled.

*Judgment affirmed.*

PORTER, A.J., and PATRICIA A. BLACKMON, J., concur.