[Cite as *State v. McCormick*, 2020-Ohio-3140.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 19CA011502 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JACOB MCCORMICK | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 18CR098405 |

DECISION AND JOURNAL ENTRY

Dated: June 1, 2020

HENSAL, Judge.

{¶1}   Jacob McCormick appeals his convictions and sentence from the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   The victim and Mr. McCormick met at a roller-skating rink.  The victim was 12 years old and in sixth grade at the time, and Mr. McCormick was 18 years old, out of high school, and living with his mother.  According to Mr. McCormick, he was volunteering at the skating rink when he approached the victim because she seemed sad.  The two conversed for a short while and exchanged cell phone numbers.  According to Mr. McCormick, he did not know the victim was 12 years old, and instead thought she was 15 years old.  Although Mr. McCormick denied telling the victim his age, the victim testified that Mr. McCormick told her he was 19 years old.

{¶3}   Later that evening, the victim and Mr. McCormick began texting each other and used Skype to video chat.  Mr. McCormick eventually suggested that the victim sneak out of her

parents' house to meet up with him, which she did. According to the victim, Mr. McCormick picked her up in his car after midnight and they drove to a nearby cemetery. While there, the two got into the back seat of Mr. McCormick's car, kissed, and Mr. McCormick touched her vagina under her clothing, but on top of her underwear. According to Mr. McCormick, they drove to a vacant driveway and kissed; he did not touch her vagina. He then took the victim home.

{¶4} The victim and Mr. McCormick met again the following evening. According to the victim, she snuck out of her parents' house late at night, and Mr. McCormick drove her to his house. While there, Mr. McCormick touched her breasts and vagina, had vaginal sex with her, and then drove her home. According to the victim, the same thing happened the following two nights; she would sneak out late at night, Mr. McCormick would pick her up, they would have sex at his house, and then he would take her home. According to Mr. McCormick, he and the victim never had sex, and he never took her to his house; they would talk and kiss in his car. He testified that he never touched the victim's breasts or vagina.

{¶5} According to the victim's mother, she started to notice a change in the victim's behavior. She testified that the victim started sleeping more, was constantly on her phone, and that she was not completing her schoolwork. The victim's mother asked her older daughter (the victim's half-sister) to look through the victim's phone, which revealed text messages between the victim and Mr. McCormick that caused the victim's mother concern. Specifically, the victim's mother was concerned with text messages from the victim to Mr. McCormick asking him to pick her up late at night, and a text message from Mr. McCormick to the victim indicating that the victim "must smell like sex."

{¶6} The victim's mother contacted the Lorain County Sheriff's Office. Detective Clotz came to the victim's house and spoke with the victim's mother and stepfather; he did not speak to

the victim. The victim's mother gave Detective Clotz the victim's cell phone, and Detective Clotz took it to the Sheriff's Office to run a forensic test on it, which revealed over one-thousand text messages between the victim and Mr. McCormick over the course of several days. Detective Clotz was likewise concerned with the content of some of the text messages, so he scheduled an interview with the victim at the Nord Center. During that interview, the victim denied that she and Mr. McCormick had sex. Detective Clotz, however, felt that the victim was not being completely honest, and that the victim was withholding information because she was not ready to discuss it yet. After the interview, Detective Clotz advised the victim's parents to watch her behavior and make sure she felt comfortable talking to them.

{¶7} According to the victim's mother, a few weeks after the interview, the victim told her that she had not been completely honest with Detective Clotz, and that she felt uncomfortable talking to him because he was male. The victim's mother relayed this information to Detective Clotz, who arranged for a second interview for the victim with a female detective. During that interview, the victim admitted to having sex with Mr. McCormick on one occasion.

{¶8} A grand jury indicted Mr. McCormick on two counts of rape (one in violation of Revised Code Section 2907.02(A)(1)(b), one in violation of Section 2907.02(A)(2)), four counts of gross sexual imposition in violation of Section 2907.05(A)(4), and four counts of contributing to the unruliness or delinquency of a child in violation of Section 2919.24(B)(1). Mr. McCormick pleaded not guilty, and the matter proceeded to a jury trial. The victim, the victim's mother, and Detective Clotz testified on behalf of the State. Mr. McCormick and his mother testified on behalf of the defense.

{¶9} At the close of evidence, the trial court instructed the jury on the elements of each offense. While instructing the jury on the elements of gross sexual imposition, the trial court

discussed the element of purpose, indicating that it had previously defined "purposely" for the jury. During a sidebar, the prosecutor stated that purpose is not an element of gross sexual imposition, and the trial court and defense counsel agreed. The trial court then addressed the jury, informing it that purpose was not an element of gross sexual imposition, and that it would correct the written instructions to reflect that. The jury then retired for deliberations.

{¶10} The following day, the trial court indicated to counsel that it originally instructed the jury correctly because the definition of sexual contact, which is an element of gross sexual imposition, includes the word purpose. It then re-instructed the jury on the element of purpose for the gross-sexual-imposition counts, and provided the jury with a corrected set of jury instructions. It advised the jury that if it had already found Mr. McCormick not guilty on those counts, then it did not need to re-deliberate. It also advised the jury that if it had not reached a verdict on those counts, or if it had reached a guilty verdict, then it needed to re-deliberate those counts using the corrected jury instructions. The jury continued to deliberate and ultimately found Mr. McCormick guilty of rape in violation Section 2907.02(A)(1)(b), not guilty of rape in violation of Section 2907.02(A)(2), guilty of all four counts of contributing to the unruliness or delinquency of a child, guilty of three counts of gross sexual imposition, and not guilty of the one remaining count of gross sexual imposition.

{¶11} The trial court merged one of the gross-sexual-imposition convictions with the rape conviction. It then sentenced Mr. McCormick to mandatory life in prison with parole eligibility after ten years for the rape conviction, two years of imprisonment for each of the remaining two gross-sexual-imposition convictions, and six months of imprisonment for each of the contributing-to-the-unruliness-or-delinquency-of-a-child convictions. It then ordered the sentences to run

concurrently. Mr. McCormick now appeals, raising four assignments of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR I

MR. MCCORMICK WAS DEPRIVED THE RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL DUE PROCESS CLAUSES AS A RESULT OF THE TRIAL COURT'S ERRONEOUS JURY INSTRUCTIONS WHICH WERE CORRECTED A DAY AFTER THEY WERE CHARGED ORIGINALLY.

{¶12} In his first assignment of error, Mr. McCormick argues that the trial court committed plain error when it instructed the jury on the element of purpose for the gross-sexual-imposition counts. He acknowledges that the trial court ultimately instructed the jury correctly since purpose is an element of gross sexual imposition, but asserts that the jury was probably confused after having been instructed in three different manners on the same counts (i.e., that purpose was an element, then that it was not an element, and then again that it was an element). Mr. McCormick also argues that the trial court committed plain error by not giving a *Howard* charge to the jury after the jury submitted a question to the court asking: "We need to be unanimous on every count, correct?"

{¶13} As Mr. McCormick has conceded in his merit brief, an "[a]ppellant's failure to object to the jury instructions waives all challenges except plain error." *State v. Wallace*, 9th Dist. Lorain No. 06CA008889, 2006-Ohio-5819, ¶ 5, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 52. Under Criminal Rule 52, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists only where there is a deviation from a legal rule, that is obvious, and that affected the appellant's substantial rights to the extent that it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is noticed "with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶14} As previously noted, Mr. McCormick acknowledges that the trial court ultimately instructed the jury correctly on the counts for gross sexual imposition. *See State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 28 ("[T]he element of sexual contact in an R.C. 2907.05(A)(4) violation requires a mens rea of purpose."). He essentially argues, however, that – because the trial court initially instructed the jury correctly, then instructed the jury incorrectly, and then instructed the jury for a third time, indicating that its original instructions were correct – the jury must have been confused, especially since they had already begun deliberating. His argument, however, fails to establish that the trial court obviously deviated from a legal rule that affected the outcome of the trial. The trial court ultimately instructed the jury correctly, and Mr. McCormick has cited no authority indicating how the manner in which the jury was instructed resulted in error, let alone plain error. *See* App.R. 16(A)(7) (requiring an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to * * * authorities[.]"). Furthermore, speculating that the jury must have been confused does not demonstrate prejudice for purposes of establishing plain error. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 54 (addressing a plain-error argument and stating that "speculation cannot prove prejudice."). We, therefore, reject his argument in this regard.

{¶15} We now turn to Mr. McCormick's argument that the trial court committed plain error by not giving a *Howard* charge to the jury after the jury asked: "We need to be unanimous on every count, correct?" "A *Howard* charge is a supplemental instruction that is given to a deadlocked jury unable to reach a verdict." *State v. Helm*, 1st Dist. Hamilton No. C-150242, 2016-

Ohio-500, ¶ 15.  In *Howard*, the Ohio Supreme Court approved the following jury instruction for

deadlocked juries:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict.  In a large proportion of cases, absolute certainty cannot be attained or expected.  Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others.  You should consider it desirable that the case be decided.  You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one.  Likewise, there is no reason to believe that more or clearer evidence will be produced by either side.  It is your duty to decide the case, if you can conscientiously do so.  You should listen to one another's arguments with a disposition to be persuaded.  Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous.  If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached.  Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath.  Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

*State v. Howard*, 42 Ohio St.3d 18 (1989), paragraph two of the syllabus.  "[T]he Ohio Supreme

Court recognized two specific goals that such a supplemental instruction should further, namely

to 'encourage a verdict where one can conscientiously be reached,' and to be balanced, 'asking all

jurors to reconsider their opinions in light of the fact that others do not agree.'"  *Helm* at ¶ 15,

quoting *Howard* at 25.

{¶16}   There is no requirement that a jury specifically indicate that it is deadlocked before

it is appropriate for a trial court to give a *Howard* charge.  *State v. Shepard*, 10th Dist. Franklin

No. 07AP-223, 2007-Ohio-5405, ¶ 12.  Instead, it is within a trial court's discretion to determine

whether a jury is deadlocked.  *Id.*  Here, the jury asked: "We need to be unanimous on every count,

correct?"  The trial court confirmed with the jury that its verdict on each count needed to be

unanimous. Immediately thereafter, during a sidebar, the prosecutor expressed concern that the

jury might be hung on some counts. The trial court acknowledged this and informed the jury that if it was unable to reach a unanimous verdict on some of the counts, it was to do its best and "battle it out[.]" Defense counsel did not object, nor did he request a *Howard* charge.

{¶17} Mr. McCormick's argument on appeal is entirely premised upon the jury indicating that it was deadlocked, and the trial court's failure to give a verbatim *Howard* charge. While a trial court's failure to give a *Howard* charge can result in plain error when the jury has indicated that it is deadlocked, that it not what occurred in this case. *See, e.g.*, *Jones v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 107030, 2019-Ohio-347, ¶ 44 (holding that "the trial court's failure to provide a *Howard* charge after receiving the third and fourth communication of a deadlock was plain error."). Here, the jury simply asked: "We need to be unanimous on every count, correct?" Despite the prosecutor's concern that this question might mean the jury was deadlocked, the jury itself did not indicate that it was deadlocked. Aside from presupposing that the jury indicated it was deadlocked, and that the trial court was required to give a verbatim *Howard* charge, Mr. McCormick has not otherwise argued how the trial court erred in this regard. Under these circumstances and in light of the plain-error standard, this Court cannot say that Mr. McCormick has established that the trial court erred by not giving a *Howard* charge to the jury. *See State v. Dennis*, 9th Dist. Summit No. 17156, 1996 WL 233501, *17 (May 8, 1996) (holding that the trial court did not err by not giving a *Howard* charge when the jury did not indicate that it was unable to reach a verdict). Mr. McCormick's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

MR. MCCORMICK'S SENTENCE IS CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF ARTICLE 1, SECTION 9 OF THE OHIO CONSTITUTION AND THE EIGHTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE THE SENTENCE IS GROSSLY DISPROPORTIONATE TO THE NATURE OF THE OFFENSE.

{¶18} In his second assignment of error, Mr. McCormick argues that his sentence for rape is cruel and unusual punishment as applied to him. More specifically, he argues that his sentence is unconstitutional because it is grossly disproportionate to the nature of the offense in light of the fact that he was only 18 years old at the time of the offense, and because he did not use force, which is supported by the fact that the jury acquitted him of rape under Section 2907.02(A)(2).

{¶19} The Eighth Amendment to the United States Constitution (applied to the states through the Fourteenth Amendment) and Article I, Section 9 of the Ohio Constitution prohibit the infliction of cruel and unusual punishment. Here, the trial court sentenced Mr. McCormick to life in prison with parole eligibility after ten years for the rape conviction in accordance with Section 2971.03(B)(1)(a). "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). "[W]e are to presume that the state statute is constitutional, and the burden is on the person challenging the statute to prove otherwise beyond a reasonable doubt." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.'" (Alteration sic.) *Id.*, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting).

{¶20} In support of his assignment of error, Mr. McCormick relies upon the United States Supreme Court's decision in *Solem v. Helm*, which stated that:

> a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

463 U.S. 277, 292 (1983). He also cites Ohio case law for the proposition that "a sentence does not violate the constitutional prohibition against cruel and unusual punishment if it is not so greatly disproportionate to the offense as to 'shock the sense of justice of the community.'" *State v. Barnes*, 136 Ohio App.3d 430, 434 (8th Dist.2000), quoting *State v. Chaffin*, 30 Ohio St.2d 13, 17 (1972). Further, Mr. McCormick relies upon the United States Supreme Court's decision in *Roper v. Simmons*, holding that the death penalty cannot be imposed upon persons under the age of 18, and a Kentucky court's expansion of that ruling to the age of 21. *See Roper v. Simmons*, 543 U.S. 551, 575 (2005); *Commonwealth of Kentucky v. Bredhold*, Ky.Cir.Ct. No. 14-CR-161, 2017 WL 8792559, *6 (Aug. 1, 2017). He acknowledges that the latter two cases address the death penalty, but concludes that they are applicable to an 18-year-old being sentenced to life in prison because studies regarding juveniles' brain development demonstrate that individuals cannot make proper decisions until they are at least 21 years old. He then summarily concludes – without any citations to authority – that his sentence is disproportionate in comparison to other cases with older defendants, and that his sentence is cruel and unusual punishment because his acquittal for rape under Section 2907.02(A)(2) indicates that he did not use force.

{¶21} This Court is unpersuaded by Mr. McCormick's reliance upon federal case law regarding the unconstitutionality of sentencing a juvenile to death, which is readily distinguishable. Regarding his argument under Ohio law, Mr. McCormick ignores case law holding that a life sentence for raping a child does not constitute cruel and unusual punishment. *See State v. Accorinti*, 12th Dist. Butler Nos. CA2012-10-205, CA2012-11-221, 2013-Ohio-4429, ¶ 22 (collecting cases). Moreover, he has not directed this Court to any authority demonstrating why his sentence is unconstitutional as applied to him because he was only 18 years old at the time of the offense, and he did not forcibly rape the victim. *See* App.R. 16(A)(7). Based upon the limited

argument presented, we cannot say that Mr. McCormick has met his burden of proving that his statutorily mandated sentence for rape is unconstitutional as applied to him. *See Lowe*, 2007-Ohio-606, at ¶ 17. We, therefore, overrule his second assignment of error.

ASSIGNMENT OF ERROR III

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶22} In his third assignment of error, Mr. McCormick argues that his rape conviction is not supported by sufficient evidence. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶23} Section 2907.02(A)(1)(b), under which Mr. McCormick was convicted, provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The definition of "[s]exual conduct" includes "vaginal intercourse between a male and female[,]" and provides that "[p]enetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01(A).

{¶24} Mr. McCormick's challenge to the sufficiency of the evidence is based upon the victim's alleged lack of credibility. Specifically, he points to the fact that the victim testified that he did not ejaculate, which he asserts was not credible. He, therefore, concludes that the State was unable to prove the elements of penetration and sexual conduct for purposes of his rape conviction.

{¶25} As the Ohio Supreme Court has "repeatedly pointed out[,]" an evaluation of a witness's credibility "is not proper on review for evidentiary sufficiency." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. We, therefore, reject Mr. McCormick's argument as it relates to the victim's credibility. Further, the victim testified that Mr. McCormick inserted his penis into her vagina. This was sufficient to prove sexual conduct as defined under Section 2907.01(A); the State was not required to prove that Mr. McCormick ejaculated. *See State v. Bush*, 4th Dist. Ross No. 09CA3112, 2009-Ohio-6697, ¶ 45 ("[T]he crime of rape does not require the State to prove that the defendant achieved a sexual climax."). Thus, in light of the arguments presented, Mr. McCormick has not established that the State failed to present sufficient evidence to support his conviction for rape. Accordingly, Mr. McCormick's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶26} In his fourth assignment of error, Mr. McCormick argues that his convictions are against the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. "An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases in which the evidence weighs heavily against the conviction." *State v. Austin*, 9th Dist. Summit No. 28199, 2017-Ohio-7845, ¶ 39, citing *Otten* at 340.

**{¶27}** In support of his assignment of error, Mr. McCormick argues that the victim was not credible. He points to the fact that the victim testified that he and his mother got into an argument one evening while she was at his house, and that the police arrived. Mr. McCormick and his mother, however, testified that this did not happen. Detective Clotz confirmed that there were no records of the police responding to the house during the evening/early morning hours when the victim stated that she was at the house.

**{¶28}** In further support of his assignment of error, Mr. McCormick argues that the victim was not credible because she provided four different explanations of what sexual contact, if any, occurred between them. He notes that the victim told Detective Clotz that she did not have sex with him, she did not tell her parents that she had sex with him, she told the female detective that

they had sex one time, and then she testified at trial that they had sex every time they met with the exception of the first night in the cemetery.

{¶29} Regarding his argument relative to the victim's testimony that the police responded to his house on one of the nights she was there, the victim admitted that she did not see the police. She testified that she heard someone arrive, and that Mr. McCormick told her that the police had arrived because he and his mother got into an argument. The jury was free to believe the victim's testimony in this regard. *Jordan*, 2004-Ohio-7184, at ¶ 35. Regarding the different explanations of what occurred between her and Mr. McCormick, defense counsel cross-examined the victim about the various inconsistencies. The victim acknowledged these inconsistencies but testified that she was telling the truth at trial. She further testified that she was worried she would get into even more trouble if she disclosed how many times she and Mr. McCormick had sex. Again, the jury was free to believe the victim's testimony in this regard. *Id.*

{¶30} Having reviewed the record and the arguments presented on appeal, this Court cannot say that Mr. McCormick has established that this is the exceptional case where the evidence weighs heavily against his convictions. Mr. McCormick's fourth assignment of error is overruled.

III.

{¶31} Mr. McCormick's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.